# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4865-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

E.M.,

     Defendant,

and

J.B.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.N.M.,

     Minor.

_____

Submitted April 1, 2020 — Decided April 23, 2020

Before Judges Whipple, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0003-19.

Jeffrey E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Richard A. Foster, Assistant Deputy Public Defender, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Kathryn E. Talbot, Deputy Attorney General, on the brief).

Jeffrey E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; James Joseph Gross, Designated Counsel, on the brief).

PER CURIAM

J.B.[1], the father of four-year-old A.N.M., appeals from a June 24, 2019 judgment terminating his parental rights.[2] We affirm for the reasons Judge Wayne J. Forrest expressed in his thorough, and well-written, fifty-five-page decision.

We summarize the facts, which are set forth in greater detail in the judge's opinion. The trial in this matter occurred over four days, during which the

---

[1] We utilize initials pursuant to Rule 1:38-3(d)(12).

[2] The child's mother, E.M., did not appeal from the judgment.

Division of Child Protection and Permanency (Division) presented six witnesses, including a caseworker, adoption caseworker, caseworker supervisor, resource supervisor, resource caseworker, and expert psychologist Dr. Amy Becker-Mattes. E.M. neither appeared for trial, nor presented witnesses, and the law guardian supported the entry of a judgment of guardianship and presented no witnesses. J.B., who was incarcerated at the time of trial, attended trial and testified on his own behalf, as did C.B.-K., his former stepmother. The judge found all the witnesses testified credibly and J.B. "somewhat credible" because his testimony lacked knowledge of certain facts. The judge also considered thirty-one exhibits, which were moved into evidence.

The evidence revealed the Division was involved with the family since A.N.M.'s birth in December 2015, primarily because of E.M.'s substance abuse and mental health problems. The evidence overwhelmingly demonstrated J.B. also had substance abuse problems, committed domestic violence, and was in and out of incarceration for much of A.N.M.'s life related to drug distribution charges, car-jacking, and other offenses.

Notwithstanding, during its lengthy involvement, the Division provided both parents and A.N.M. with a myriad of services, offered visitation with A.N.M., considered relative placement options, and conducted bonding

evaluations. However, as relates to this appeal, J.B. missed several substance abuse evaluations, treatment sessions, and parenting classes, did not keep in contact with the Division, and did not request visitation with the child until October 2018. A.N.M. bonded with her resource parents, who wished to adopt her.

Judge Forrest concluded the Division clearly and convincingly proved all four prongs of the best interests test, codified in N.J.S.A. 30:4C-15.1(a). He found because of J.B.'s chronic criminality, incarceration, and failure to comply with services and visitation, the Division proved the first prong. When J.B. did exercise visitation or comply with services in between his incarcerations, the judge found the evidence showed

> before and after the visits with [J.B.], [A.N.M.] had separation anxiety issues and aggression issues towards her resource parents . . . Dr. Becker-Mattes testified to the fact that the resource parents had to take turns sleeping in [A.N.M.]'s room in order to assist [her] with her anxiety issues. On November 28, 2018, [J.B.] attended a substance abuse evaluation and tested positive for THC [and was] referred to an intake appointment with Project Free in December 2018[, which] . . . [he] attended . . . but was discharged due to his impending incarceration.
>
> . . . .
>
> [A]fter being sentenced . . . on January 11, 2019, [J.B.] returned to incarceration[, and] . . . at a court

ordered mediation, [J.B.] requested that he have visitation. . . . On April 16, 2019, the Division began monthly visitation with [J.B.] and [A.N.M.] at his correctional facility . . . . Before the visit, [A.N.M.] was upset[,] . . . did not want to get into the caseworker's vehicle[,] . . . [and] [d]uring the visit, [she] slept on [J.B.]'s lap. . . .

In January 2019, after a psychological evaluation of [J.B.], Dr. Becker-Mattes diagnosed him with adult antisocial behavior[,] . . . [and] explained that [J.B.]'s . . . diagnosis raises serious concerns about [J.B.] and his ability to parent appropriately. . . .

Based on . . . [J.B.]'s consistent incarceration, lack of compliance with services and lack of involvement with [A.N.M.], [A.N.M.]'s safety, health or development has been and will continue to be endangered by a parental relationship with . . . [J.B.] . . . .

The judge found the Division proved prong two, and concluded J.B. was unwilling or unable to parent A.N.M. The judge stated:

[J.B.] has a long criminal history and has been incarcerated repeatedly since [A.N.M.]'s birth[, and] . . . ha[s] a history of unstable employment and housing . . . [J.B. is] unwilling or unable to eliminate the harm that has endangered [A.N.M.]'s health and development and [has] failed to provide a safe and stable home for [A.N.M.] At three years old, [A.N.M.] has separation anxiety and attachment issues with her resource parents due [to] . . . [J.B.]'s instability and inconsistency in [her] life. Therefore, further delay in permanent placement will harm [A.N.M.]

. . . .

5

On August 22, 2016, the caseworker met [J.B.] . . . where [E.M.] was staying . . . [h]owever, [J.B.] knew about the Division's involvement prior because he was writted in from prison for the court hearing on July 19, 2016. . . . By the end of 2016 . . . [J.B.] had not complied with substance abuse referrals or parenting classes. . . .

Between January and April 2017, the Division did not know of [J.B.]'s whereabouts and he was not making himself available to the Division. . . . Although, [J.B.] was not incarcerated from June 4, 2017 until September 15, 2017, and from October 2017 until May 4, 2018[,] . . . [J.B.] did not contact the Division during those periods that he was not incarcerated. . . .

In April 2018, [J.B.]'s paternity was established as to [A.N.M.,] [and] . . . [J.B. was] served with the guardianship complaint in July 2018 . . . but did not contact the Division in regards to [A.N.M.] until the caseworker contacted and spoke to [J.B.] in September 2018.

. . . .

[J.B.] expects [A.N.M.]'s permanency needs to be put on hold for two to three more years until he is released from incarceration.

During [J.B.]'s psychological evaluation . . . he [informed] [Dr. Becker-Mattes] that he had two other children who were not in his care[,] . . . was unable to recount the names or ages of some of his children or their mothers[,] [and] he did not have his own home . . . [J.B.] provided . . . a few jobs that he had held, but did not provide dates or lengths of the employment.

. . . .

6

[I]t is evident that . . . [J.B.] [is] unwilling or unable to nurture and care for [A.N.M.] . . . [J.B.] has shown this through his lack of involvement in [A.N.M.]'s life due to his repeated incarcerations throughout the litigation and his own unwillingness to engage in services or visitation. . . . [D]elaying permanent placement will add to the harm that the child has already suffered, as [A.N.M.] has been in placement since February 2, 2017[,] and deserves permanency, which can be achieved with her current resource parents.

The judge concluded the Division proved prong three because it made reasonable efforts to reunify A.N.M. with her parents and explored alternatives to a termination of parental rights. In this regard, the judge found

the Division referred [J.B.] to parenting classes, substance abuse evaluations and treatment, a psychological and bonding evaluation, supervised visitation while he was and was not incarcerated, a DNA paternity test, and conducted a search for [J.B.] in 2017. . . . Additionally, the Division provided [A.N.M.] with three resource placements, a bonding evaluation with [J.B.] and her resource parents, regular [minimum visitation requirements], an Early Intervention Evaluation, a DNA paternity test with [J.B.], counseling, and visitation with both of her parents.

. . . .

In April 2019, the Division began providing [J.B.] visitation with [A.N.M.] at Southern State Correctional Facility. . . .

. . . .

7

[J.B.] ha[s] failed to sufficiently take advantage of the Division's offered services, despite the Division's reasonable efforts to provide them. . . . [J.B.] ha[s] also not demonstrated the necessary stability or commitment to care [for his] child . . . .

The judge detailed the Division's efforts to secure a placement with a relative resource. He noted the Division first contacted C.B.-K. as a possible placement option for A.N.M., allowed her to attend J.B.'s visits with A.N.M., but eventually ruled her out because she lacked the mental health to care for A.N.M. Additionally, the Division considered J.B.'s girlfriend, A.N.M.'s paternal and maternal grandmothers, and her maternal great aunt—all of whom were ruled out because they were unwilling or unable to care for her.

The judge concluded the Division proved prong four and that termination of parental rights would not do more harm than good because the child was bonded to her resource parents, who could ameliorate the harm caused by severance of the parental relationship. Moreover, the judge found

> there is no realistic likelihood that . . . [J.B.] will be able to safely and appropriately care for [A.N.M.] now or in the foreseeable future. . . . [J.B.] has been repeatedly incarcerated since [A.N.M.]'s birth, and did not start visiting with [A.N.M.] until October 2018.
>
> . . . Despite being out of incarceration on multiple occasions in 2017 and 2018, [J.B.] did not make himself available for visitation with [A.N.M.] prior to October 2018.

A-4865-18T3

. . . [J.B. is] unable to provide [A.N.M.] with a safe and stable home and the permanency she so desperately needs and deserves. The termination of the parental rights of . . . [J.B.] would certainly not result in more harm than good for the child. Based on all the evidence and testimony presented, there is no probable expectation in the ability of . . . [J.B.] to make the changes necessary to provide [A.N.M.] with permanency given [his] untreated substance abuse issues, inability to obtain stable housing and employment, lack of involvement in [his] daughter's life and [J.B.]'s incarcerations.

On appeal, J.B. raises the following points for our consideration:

I. THE TRIAL COURT ERRED IN RULING THAT EACH PRONG OF N.J.S.A. 30:4C-15.1(a) HAD BEEN SATISFIED IN THIS CASE, AND THE TERMINATION OF THIS APPELLANT FATHER'S PARENTAL RIGHTS AS TO HIS DAUGHTER MUST BE REVERSED.

A. THE TRIAL COURT ERRED IN FINDING THAT THE PARENTAL RELATIONSHIP WOULD CAUSE ENDURING HARM OR RISK OF HARM TO THE CHILD, BECAUSE DCPP'S EVIDENCE FAILED TO ESTABLISH ANY CAUSAL LINK BETWEEN WILLFUL ACTS OR OMISSIONS OF THIS FATHER AND ANY HARM OR RISK TO HIS DAUGHTER.

B. THE TRIAL COURT ERRED IN FINDING THAT THE FATHER WAS UNWILLING OR UNABLE TO CEASE CAUSING HARM TO HIS DAUGHTER, SINCE NO ENDURING HARM OR RISK HAD BEEN ENGENDERED IN THE FIRST PLACE, AND THE DIVISION FAILED TO PROVIDE THIS FATHER ANY MEANS TO EVINCE HIS WILLINGNESS AND ABILITY IN ANY CASE.

C. THE TRIAL COURT ERRED IN FINDING THAT DCPP HAD SATISFIED THE THIRD PRONG, AS DCPP'S WILLFUL AND UNEXPLAINED DELAY IN IDENTIFYING AND ASSESSING AVAILABLE RELATIVES UNDERMINED THE COURT'S ABILITY TO MAKE A FULL AND VALID CONSIDERATION OF EVERY ALTERNATIVE TO TERMINATION, AND THE COURT ITSELF EFFECTIVELY AND IMPROPERLY RELIEVED DCPP OF ITS REASONABLE-EFFORTS OBLIGATION TOWARD J.B. AS AN INCARCERATED PARENT.

D. THE TRIAL COURT'S FINDING THAT TERMINATION OF PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD IS UNSUPPORTABLE AS A MATTER OF LAW, BECAUSE THE COURT ERRED IN FINDING THAT THE OTHER STATUTORY PRONGS HAD BEEN SATISFIED.

Having reviewed the record, we conclude these arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only these comments.

In striking a balance between a parent's constitutional rights and a child's fundamental needs, courts employ the four-part guardianship test articulated in N.J. Div.of Youth & Family Servs. v. A.W., 103 N.J. 591, 604-11 (1986), and codified as N.J.S.A. 30:4C-15.1(a), which states:

> The division shall initiate a petition to terminate parental rights on the grounds of the "best interests of the child" pursuant to subsection (c) of section 15 of

A-4865-18T3

P.L. 1951, c. 138 (C. 30:4C-15) if the following standards are met:

(1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

In their application, the four factors above "'are not discrete and separate, but relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests.'" N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 167 (2010) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 606-07 (2007)).

In reviewing Judge Forrest's decision, we must defer to his factual findings unless they "'went so wide of the mark that a mistake must have been

made.'" N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citation omitted). So long as "they are 'supported by adequate, substantial and credible evidence,'" a trial judge's factual findings will not be disturbed on appeal. In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (citation omitted). We owe special deference to the trial judge's expertise in handling family issues. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998).

Having reviewed the record, we conclude the judge's factual findings are based on sufficient credible evidence, and in light of those findings, his legal conclusions are unassailable. The record amply supports his decision that termination of J.B.'s parental rights is in A.N.M.'s best interests.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4865-18T3